IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TROY ACREE, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL NO. 11-1070-GPM |
| | ) |
| BNSF RAILWAY COMPANY, | ) |
| | ) |
|        Defendant. | ) |

## **MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

    This case is a suit under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*. Plaintiff Troy Acree alleges that on August 12, 2010, while he was employed as an apprentice signalman by Defendant BNSF Railway Company ("BNSF") in Alpha, Illinois, he was directed by his foreman, Joseph Baker, to use metal bars to hold, position, and balance a railroad switch while Baker drove a backhoe toward the switch in an effort to load the switch onto the backhoe. As Baker attempted to pick up the switch, the switch was moved and jerked in a manner that caused Acree to experience stress on his back, arms, and legs. When Acree mentioned this to Baker, Baker warned Acree to be careful about reporting injuries during his first sixty days of employment with BNSF because, if he did, he, Acree, would be terminated. Subsequently, Acree experienced stiffness in his back and body, and on August 20, 2010, when Acree went to see Dr. Flynn, with whom Acree had a previously-scheduled appointment concerning a condition unrelated to Acree's employment with BNSF, Acree informed Flynn that he had begun to suffer pain and discomfort in his back since the incident on August 12, 2010. Flynn prescribed

pain medication to Acree and ordered that, if Acree's back condition did not improve, Acree would have an x-ray taken of his back on August 23, 2010.

Because August 23, 2010, was not one of Acree's regular rest days under the terms of his employment with BNSF, on August 22, 2010, Acree telephoned Baker and informed him that he, Acree, would not be able tor report for work the next day because he needed to undergo an x-ray examination.  Later on August 22, Acree received a telephone call from Dan Dunn, a signal supervisor with BNSF, who, having been informed by Baker of Acree's telephone call earlier in the day, told Acree that, because he was taking prescription medication, he was required to complete a personal injury report, and that he should not report for work the next day and instead appear for his scheduled x-ray.  The following day, Acree received a telephone call from Baker informing Acree that he should not report for work until Acree was cleared by Dunn to return to work.  Later the same day, Acree received a telephone call from Dunn in which Dunn informed Acree that he, Dunn, was faxing Acree a blank personal injury report that Acree should complete and return to BNSF; Dunn also told Acree not to return to work with until Acree was medically approved to do so. On August 24, 2010, Acree completed the personal injury report and faxed it back to BNSF. On August 30, 2010, Acree received a letter from BNSF, dated August 25, 2010, informing Acree that his employment with BNSF was terminated.

On December 8, 2011, Acree filed this lawsuit against BNSF.  In Count I of Acree's complaint, Acree alleges that BNSF breached its duty under FELA to furnish Acree with reasonably safe conditions of work.  Count II of Acree's complaint alleges that Acree was terminated for reporting an on-the-job injury, in violation of 49 U.S.C. § 20109 and BNSF's internal control plan, contained in 49 C.F.R. Part 225.  Count III of Acree's complaint appears to assert a common-law

claim for retaliatry discharge. Obviously, Count I and Count II of Acree's complaint arise under federal law within the meaning of 28 U.S.C. § 1331, so that Count III of Acree's complaint is within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Nevertheless, Acree argues also that Count III of his complaint is within the Court's subject matter jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.[1] Currently this matter is before the Court on BNSF's motion for transfer of this case to the United States District Court for the Central District of Illinois pursuant to 28 U.S.C. § 1404. The motion for transfer has been fully briefed, and the Court now rules as follows.

"Congress has codified the doctrine [of forum non conveniens] and has provided for transfer rather than dismissal, when a sister federal court is the more convenient place for trial of the action." *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). *See also Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 717 (7th Cir. 2002) (noting that "with respect to cases wholly within the system of U.S. federal courts, the doctrine [of forum non conveniens] has been largely replaced by the transfer of venue statute, 28 U.S.C. § 1404(a)[.]"). Thus, a court may "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). Under Section 1404(a), the moving party must show that "(1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve

---

1. Although Acree properly alleges that he is a ciizen of Illinois and that the amount in controversy in this case exceeds $75,000, technically Acree needs to state that the jurisdictional amount is exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). Also, Acree identifies only the state where BNSF is incorporated, Delaware, but not the state where BNSF maintains its principal place of business or "nerve center." *See* 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192-95 (2010).

the convenience of the parties and witnesses as well as the interests of justice." *Continental Cas. Co. v. Staffing Concepts, Inc.*, No. 06 C 5473, 2009 WL 3055374, at *2 (N.D. Ill. Sept. 18, 2009). The parties agree that venue and jurisdiction are proper in both the Southern District of Illinois and the Central District of Illinois.[2] Therefore, the Court's decision turns on whether BNSF has met its burden of demonstrating that the "transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d, 217, 220 (7th Cir. 1986). *See also Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989); *FDIC v. Citizen Bank & Trust Co of Park Ridge, Ill.*, 592 F.2d 364, 368 (7th Cir. 1979).

In deciding whether a transfer of a case will serve the convenience of the parties and witnesses, and promote the interests of justice, a court must analyze the private interests of the parties as well as the public interests of the court. *See Research Automation, Inc. v. Schrader-Brideport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). The weighing of the relevant interests "involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey*, 796 F.2d at 219. The factors relevant to the parties' private interests include "(1) plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses." *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006). The court must also consider the "interest of justice" or the "public interest," which "relates to the

---

2.  It should be noted that FELA has its own special venue provision, under which a FELA action may be brought "in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action." 45 U.S.C. § 56. This statute provides a plaintiff with a wide choice of forums, but it "is fully subject" to the transfer provisions of 28 U.S.C. § 1404(a). *Binz v. Iowa Interstate R.R., Ltd.*, No. 98 C 6381, 1999 WL 90642, at *1 (N.D. Ill. Feb. 10, 1999).

efficient administration of the court system." *Research Automation*, 626 F.3d at 978. These public interest factors include: "docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Id*. (citations omitted).

The Court turns first to the private interest factors. A plaintiff's choice of forum is generally given substantial weight, particularly when it is the plaintiff's home forum. *See Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re National Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). However, a plaintiff's choice of forum is not conclusive and may be afforded less deference when another forum has a stronger relationship to the dispute or when the chosen forum has no significant connection to the site of material events, in this instance, Alpha, Illinois, in the Central District of Illinois. *See Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 857 (N.D. Ill. 2007). Here, Acree lives in the Southern District of Illinois, but this District has no connection to the material events in this case, e.g, Acree's injury on August 12, 2010. *See e.g., Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (a plaintiff's choice of forum has only "minimal value where none of the conduct occurred in the forum selected by plaintiff"). *See also Technical Concepts LP v. Zurn Indus., Inc.*, No. 02 C 5150, 2002 WL 31433408, at **3-4 (N.D. Ill. Oct. 31, 2002) (granting transfer under 28 U.S.C. § 1404 where the plaintiff's cause of action did not arise in the forum and the proposed transferee forum was the primary site of material events). *Accord Purdy v. Munden*, 356 F. Supp. 2d 658, 660 (E.D. Tex. 2005) (noting that "[t]he

evidence critical to establishing, and defending, negligence claims is generally found at or near the scene of the [alleged negligence]."). Under these circumstances, the first and second private factors weigh in favor of transferring the case to the Central District of Illinois. The relative ease and access to proof is a neutral factor in this case: some of Acree's medical records seem to be located in the Southern District of Illinois, where Dr. Flynn and Acree's treating orthopedic surgeon Dr. William Sprich reside. However, as Acree concedes, some pertinent records are located in Texas. It seems unlikely to the Court that a view of the premises where Acree was injured will be required in this case, particularly since, as Acree points out, the condition of those premises likely has changed since Acree's accident.

With respect to factor of the convenience of the parties, "the court 'considers the residence of the parties and their ability to bear the expense of trial in a particular forum.'" *Federated Dep't Stores, Inc. v. U.S. Bank Nat'l Ass'n*, No. 00 C 6169, 2001 WL 503039, at *3 (N.D. Ill. May 11, 2001) (quoting *Medi USA v. Jobst Inst., Inc.*, 791 F. Supp. 208, 210 (N.D. Ill. 1992)). Thus, "[i]t must be shown that the original forum is inconvenient for the defendant and that the alternative forum does not significantly inconvenience the plaintiff." *Continental Cas. Co.*, 2009 WL 3055374, at *5 (citing *Emhart Indus., Inc. v. Universal Instruments Corp.*, No. 88 C 4960, 1988 WL 121538, at *2 (N.D. Ill. Nov. 4, 1988)). Here, it is undisputed that Acree lives in the Southern District of Illinois and BNSF does business in both the Southern District of Illinois and the Central District of Illinois. However, the Central District of Illinois is closer to BNSF's Illinois headquarters in Chicago, making the Central District of Illinois a somewhat more convenient forum for BNSF than the Southern District of Illinois, as well as a forum that does not significantly inconvenience Acree. Thus, the factor of the convenience of parties weighs in favor

of transfer of the case to the Central District of Illinois. With respect to the convenience of the witnesses, this often is the most important factor in deciding whether to grant a motion to transfer venue. *See First Nat'l Bank*, 447 F. Supp. 2d at 913. "More weight is afforded non-party witnesses than witnesses within the control of the parties, as it is presumed that party witnesses will appear voluntarily." *Id*. *See also Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1008 (N.D. Ill. 2007). In assessing this factor, courts must consider the number of witnesses located in each forum and the importance of each witness's testimony. *See First Nat'l Bank*, 447 F. Supp. 2d at 913. A court may also consider the "availability of compulsory process for the attendance of unwilling witnesses and the costs of obtaining the attendance of the witnesses." *Id*.. The party requesting transfer must identify the key witnesses to be called and "establish that the nature and quality of their testimony with respect to the issues in the case warrant the case's transfer." *Juarez v. National R.R. Passenger Corp.*, No. 06 C 3681, 2007 WL 2713357, at *2 (N.D. Ill. Sept. 12, 2007). A court "generally assigns little weight to the location of employee-witnesses. Because these witnesses usually are within the control of the parties, they are likely to appear voluntarily in either forum." *Abbott v. Lockheed Martin Corp.*, No. 06-CV-0701, 2007 WL 844903, at *3 (S.D. Ill. Mar. 20, 2007) (citation omitted).

      Here, the parties have identified three fact witnesses, Joseph Baker, a foreman for BNSF, Todd Howeter, a signalman for BNSF, and Daniel Dunn, a signal supervisor for BNSF. Howeter and Dunn reside in the Central District of Illinois, while Baker resides in the Southern District of Illinois. However, because Baker, Howeter, and Dunn all work for BNSF, it is assumed that they can appear equally easily either in the Southern District of Illinois or the Central District of Illinois. The two non-party medical witnesses identified by Acree are Flynn and Sprich, both of whom reside

in the Southern District of Illinois and therefore are beyond the subpoena power of the United States District Court for the Central District of Illinois.  *See* Fed. R. Civ. P. 45(c)(3)(A)(ii); *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 915 (N.D. Ill. 2009).  Because Flynn and Sprich are located in the Southern District of Illinois, the factor of convenience of witnesses weighs against transfer of this case.  *See Household Fin. Servs., Inc. v. Prestige Fin. Servs. Corp.*, No. 99 C 1756, 1999 WL 608705, at *2 (N.D. Ill. Aug. 6, 1999) (noting that "inability to compel the attendance of material non-party witnesses" can be "a crucial factor" in the transfer analysis); *Anchor Wall Sys., Inc. v. R & D Concrete Prods., Inc.*, 55 F. Supp. 2d 871, 874 (N.D. Ill. 1999) ("The convenience of the plaintiff's non-party witnesses is often viewed as the most important factor in the transfer analysis."); *Karrels v. Adolph Coors Co.*, 699 F. Supp. 172, 176 (N.D. Ill. 1988) (quoting *Harris Trust & Sav. Bank v. SLT Warehouse Co.*, 605 F. Supp. 225, 229 (N.D. Ill. 1985)) ("[I]t would be imprudent to proceed in a forum where none of the important witnesses is subject to process.").

The Court turns next to consideration of the relevant public interest factors.  As discussed, these factors include:  "docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy."  *Research Automation*, 626 F.3d at 978 (citations omitted).  This analysis focuses on the efficient administration of the courts, not the merits of the underlying dispute.  *See Valbruna Stainless, Inc. v. ADT Sec. Servs., Inc.*, No. 1:10-CV-00077-WCL-RBC, 2010 WL 2772324, at *2 (N.D. Ind. July 12, 2010).  Therefore, "[t]he 'interest of justice' is a separate component of a [28 U.S.C.] § 1404(a) transfer analysis, and may be determinative in a particular case, even if the

convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220 (citations omitted). *See also Juarez*, 2007 WL 2713357, at *3 ("[Even where the convenience of the parties and witnesses may call for a different result, the 'interest of justice' component may be determinative in a particular case."); *Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*, No. 06 C 3183, 2007 WL 1560212, at *6 (N.D. Ill. May 29, 2007) ("Although the convenience of the parties and witnesses does not favor transfer, the interest of justice . . . may be determinative in a particular case[.]"") (quotation and brackets omitted). In this case, the first two public interest factors are neutral because both districts are familiar with FELA and the parties have presented no evidence that one of the districts is substantially more congested or less efficient than the other. The Court's own review of relevant statistical information shows that the median time for disposition of a civil matter is 8.8 months in the Central District of Illinois and 7.6 months in the Southern District of Illinois. *See* Table C-5: U.S. District Courts – Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, available at http://www.uscourts.gov/Statistics/JudicialBusiness.aspx#7 (last visited April 23, 2012). The statistical difference is minimal. Finally, the third and fourth public interest factors weigh in favor of transferring the case to the Central District of Illinois because there is no connection between the Southern District of Illinois and any of the material events in this case. The Central District of Illinois is the most appropriate forum to hear this case because it has an interest in resolving controversies pertaining to public safety and ensuring that persons working there have safe workplaces. BNSF does business in the Central District of Illinois and Acree worked for BNSF and was injured on the job there. Thus, the public interest factors weigh in favor of transfer of this case to the Central District of Illinois.

For the foregoing reasons, BNSF's motion to transfer this case pursuant to 28 U.S.C. § 1404(a) (Doc. 6) is **GRANTED**.  This action is hereby **TRANSFERRED** to the Central District of Illinois for all further proceedings.  BNSF's motion for partial summary judgment (Doc. 19) is carried with the case.  The Clerk of Court is directed to transmit the file of this case to the Clerk of the United States District Court for the Central District of Illinois and to close the case on this Court's docket.

**IT IS SO ORDERED.**

DATED:  April 24, 2012

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge